**Norma Iris HIRALDO–CANCEL, et al., Plaintiffs, Appellees,**

v.

**Jose E. APONTE, etc., et al., Defendants, Appellants.**

**No. 89–1452.**

United States Court of Appeals, First Circuit.

Heard May 9, 1990.

Decided Feb. 4, 1991.

[redacted]

[redacted]

Carlos Lugo Fiol, Asst. Sol. Gen., with whom Jorge E. Perez Diaz, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief, for defendants, appellants.

Jesus Hernandez Sanchez, with whom Hernandez Sanchez Law Firm, Santurce, P.R., was on brief, for plaintiffs, appellees.

Before SELYA, Circuit Judge, ROSENN *, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

The present dispute arose during the mayoral administration of Jose E. Aponte, Popular Democratic Party ("PDP"), who was elected Mayor of Carolina in the Puerto Rico General Elections of 1984. Soon after taking office, Mayor Aponte dismissed several municipal employees affiliated with the New Progressive Party ("NPP") and replaced them with PDP members. Eleven of the discharged employees commenced the present civil rights action under 42 U.S.C. § 1983 against Aponte and the Municipality of Carolina, claiming that their dismissals were politically motivated and effected in violation of their first and fourteenth amendment rights under the United States Constitution.

Following a ten-day jury trial, nine plaintiffs were awarded compensatory and punitive damages on their first amendment claims. The jury found for two of the plaintiffs on their procedural due process claims,[1] but awarded no damages. The district court ordered reinstatement of the

* Of the Third Circuit, sitting by designation.

1. There are no due process claims involved in the present appeal.

nine prevailing plaintiffs and enjoined the defendants from further discriminatory treatment based on political affiliation. The district court denied defendants' motion for judgment notwithstanding the verdict, and defendants appealed.

## I

■■■ The first claim the defendants advance on appeal is that the only rational conclusion on the evidence[2] is that the plaintiffs would have been dismissed regardless of their political affiliation, as each was employed in violation of the Puerto Rico Public Service Personnel Act ("Personnel Act"), P.R. Laws Ann. tit. 3, §§ 1301–1431 (1988). Therefore, relying on Puerto Rico law and our decision in *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1173–74 (1st Cir.1988) (career appointment null and void *ab initio* where made in violation of Personnel Act), defendants insist that there were legitimate grounds upon which each plaintiff could have been discharged, *viz.*, that their appointments were null and void under the Personnel Act. The defendants reach for refuge under the rule in *Mt. Healthy City School District Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), that a termination from government employment on account of constitutionally protected conduct may stand if the defendant can demonstrate that the plaintiff employee would have been terminated for legitimate reasons in any event. *Id.* at 285–87, 97 S.Ct. at 575–76.

Whether the present plaintiffs established by a preponderance of the evidence that their employment would not have been terminated absent their constitutionally protected political conduct—a question of fact, *see Doyle*, 429 U.S. at 287, 97 S.Ct. at 576; *Roure v. Hernandez Colon*, 824 F.2d 139, 141 (1st Cir.1987)—was submitted to the jury as follows:

[I]f you find from the preponderance of the evidence that the defendant had valid reasons to terminate plaintiff, you must find for defendant unless you find from the preponderance of the evidence that defendant would not have ... terminated plaintiffs' employment but for their political affiliation.

The jury instructions given by the district court correctly articulate the "but for" test to be used in these cases. *See Cordero v. De Jesus–Mendez*, 867 F.2d 1, 6 (1st Cir. 1989).

The jury verdicts for plaintiffs were based on ample evidence that defendant Aponte (1) knew plaintiffs were affiliated with NPP, (2) vowed to rid the Carolina municipal government of NPP members, (3) gave instructions to "chop off the heads of the NPP members," and (4) told municipal employees to switch to the PDP. As the jury rationally found that plaintiffs would not have been discharged when they were, "but for" their political affiliation, the denial of the motion for judgment n.o.v. did not constitute error. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987); *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9, 15 (1st Cir.1987).

## II

■■■ The second claim on appeal is that the district court erroneously refused to instruct the jury regarding null appointments under the Personnel Act. Although defendants concede that the personnel qualification requirements of Puerto Rico law cannot override a government employee's first amendment rights, *see, e.g.*, *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 436 (1st Cir.1989), defendants nevertheless insist that without the benefit of the requested instruction the jury was unable to assess the merits of their *Mt. Healthy* claim that plaintiffs, notwithstanding their political affiliation, would have

---

**2.** A judgment notwithstanding the verdict may be granted "only after a determination that the evidence could lead a reasonable person to only one conclusion," *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987), that the *moving party* was entitled to judgment. *Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir.1991); *Chedd–Angier Production v. Omni Publications International, Ltd.*, 756 F.2d 930, 934 (1st Cir.1985). We review a denial of judgment n.o.v. *de novo. Daewoo Corp.*, 923 F.2d at 214–215; *Aggarwal v. Ponce School of Medicine*, 837 F.2d 17, 19 (1st Cir. 1988).

been discharged in accordance with the Personnel Act.

Their claim cannot succeed, however, as the district court fully and accurately apprised the jury on defendants' Personnel Act claim, even spelling out defendants' contention for the jury. All the district court did not do was adopt the exact "nullity of appointment" language included in defendants' requested instruction, which is a matter of no determinative consequence. "[T]here is no requirement that the trial court instruct the jury in the precise form and language requested." *United States v. Passos-Paternina*, 918 F.2d 979, 984 (1st Cir.1990). *See also Joia v. Jo-Ja Service Corp.*, 817 F.2d 908, 912 (1st Cir.1987) ("While all parties are entitled to an adequate jury instruction upon the controlling issues, the court need not employ the precise language urged by any party."), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988).

Further, defendants' second claim founders for the same reason it failed in *Santiago-Negron*, a virtual mirror image of the present case: "We do not think that a new administration can use the 'nullity' of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation." *Santiago-Negron*, 865 F.2d at 436. There too the employment misadventure began shortly after the 1984 General Elections, when the new PDP mayor of Las Piedras proceeded to replace municipal employees affiliated with the NPP, with PDP members. As here, the efforts of the defendants in *Santiago-Negron* to take cover under *Mt. Healthy* were rebuffed on the ground that "[t]he instructions given on the applicability of the personnel laws of Puerto Rico were ... irrelevant to the first amendment claim." *Id.*

## III

The final contention on appeal is that the district court improvidently ordered reinstatement.[3] Before assessing the merits of defendants' contention, we note that reinstatement is an equitable remedy which is reviewed for abuse of discretion. *Rosario-Torres v. Hernandez-Colon*, 889 F.2d 314, 323 (1st Cir.1989) (en banc). Considerable deference is accorded a reinstatement order, as the district court "has had first-hand exposure to the litigants and the evidence ... [and] is in a considerably better position to bring the scales into balance than an appellate tribunal." *Id.*

Although not a presumptive entitlement in a section 1983 case, *see id.* at 322–23, we recognize that reinstatement may offer significant deterrent and curative value in appropriate cases. "If an employer's best efforts to remove an employee for unconstitutional reasons are presumptively unlikely to succeed, there is, of course, less incentive to use employment decisions to chill the exercise of constitutional rights." *Allen v. Autauga County Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir.1982); *see also Banks v. Burkich*, 788 F.2d 1161, 1164 (6th Cir.1986). Moreover, it may often be true, as the Eleventh Circuit has observed, that "[w]hen a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole." *Allen*, 685 F.2d at 1306. "The psychological benefits of work are intangible, yet they are real and cannot be ignored." *Id.*

On the other hand, government operations may be burdened by a court-ordered reunion between employer and employee in the public sector, as a consequence of the

---

**3.** The June 30, 1988 reinstatement order provided as follows:
"Because the evidence on political discrimination presented at trial was overwhelming, plaintiffs have established that injunctive relief is just and proper. Equitable relief is a component of a Section 1983 action. Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that defendants Jose Aponte and the Municipality of Carolina, their successors, agents, officers and any other person acting in concert with or on behalf of the defendants, reinstate plaintiffs to their former positions, at the same salary and with the same fringe benefits they would otherwise be receiving but for their termination. The reinstatement ordered herein shall be made forthwith and not later than ten days from the date hereof...."

hostile work environment that often attends revived antagonisms in the aftermath of litigation. Nonetheless, "such routinely 'incidental' burdens, in their accustomed manifestations, are foreseeable sequelae of defendant's wrongdoing, and usually insufficient, without more, to tip the scales against reinstatement when first amendment rights are at stake in a section 1983 action." *Rosario–Torres*, 889 F.2d at 322.

The district court must proceed "beyond the incidental burdens which any reinstatement order might impose on a public employer," and balance the equities attendant upon whatever "special considerations" may be present in the particular case. *Id.* at 323. Notwithstanding defendants' contention that the district court in the present case did not weigh several "special considerations" in the balance, important countervailing equities favored reinstatement. Over the course of the ten day trial, the district court received compelling evidence of invidious political discrimination by the defendants. The court correctly concluded that the evidence of political discrimination was "overwhelming." Moreover, the record reveals that most plaintiffs were unable to secure employment following their dismissal.

The defendants further argue that reinstatement was precluded, as all plaintiffs were ineligible for appointment and their reinstatement contravenes the Personnel Act. Although plaintiffs' ineligibility for appointment would neither suspend their first amendment rights nor undercut their entitlement to legal relief under section 1983, ineligibility considerations do bear on the appropriateness of the equitable relief of reinstatement.

As a practical matter, mere reinstatement may sometimes be a meaningless remedy where the government employer, under the aegis of valid personnel standards, is empowered to terminate reinstated employees as soon as they dust off their desks. Thus, where it appears that there is a strong possibility that a particular employee remains ineligible for appointment and therefore would be subject to nondiscriminatory termination, some courts consider reinstatement a disfavored remedy. *See, e.g., Lucas v. O'Loughlin*, 831 F.2d 232, 236 (11th Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988). But even in such straitened circumstances, the trial court, not this court, bears the principal responsibility for assessing the efficacy of the equitable remedy in the particular case. *See, e.g., Santiago–Negron*, 865 F.2d at 437. This is especially true, we suggest, since reinstatement, even for a brief interlude, often affords ancillary benefit to the employee, such as increased seniority, and enhanced eligibility for pension vesting, which do not obtain as consequences of a traditional backpay award.

The defendants assert that several other factors militate against reinstatement in the present case; for example, that more than two years elapsed between plaintiffs' dismissal and their reinstatement, plaintiffs did not request interim reinstatement, and one plaintiff even obtained employment at a higher salary. The defendants stress that similar considerations contributed to our decision to affirm a denial of reinstatement in *Rosario–Torres*. 889 F.2d at 323–24. It is noteworthy, however, that our treatment of these considerations had an entirely different orientation in *Rosario–Torres*, where these same factors formed part of the basis for our conclusion that the district court *did not* abuse its discretion. By way of contrast, the present appellants contend that these factors suggest that the district court *did* abuse its discretion in ordering reinstatement. Considering the breadth of discretion entrusted to district courts in the exercise of their equitable powers, *see, e.g., Rosario–Torres*, 889 F.2d at 323, we conclude that there was no abuse of discretion.[4]

[T]he injunctive reinstatement granted to plaintiffs requires defendants to reinstate plaintiffs to positions where the evidence at trial clearly showed that plaintiffs did not qualify or compete for their positions. Ac-

---

**4.** Following the ten day trial, defendants for the first time offered a federalism-based objection to the reinstatement order in support of their motion for judgment n.o.v.

*Affirmed. We remand to the district court for an assessment and calculation of attorney fees on appeal.*

cording to *Pennhurst State School Hospital v. Halderman,* 465 U.S. 89 [104 S.Ct. 900, 79 L.Ed.2d 67] (1984), a federal court lacks jurisdiction to order officials to enforce the law, much less propound an illegal act.

The district court denied the motion.

Finally, defendants' assertion that *Pennhurst State School Hospital v. Halderman,* 465 U.S. 89 [104 S.Ct. 900, 79 L.Ed.2d 67] (1984), prevents this court from granting injunctive relief ... is too frivolous to merit much elucidation. We reply only by borrowing Judge Bownes' words in *Cordero v. De Jesus–Mendez* [867 F.2d 1, 20 (1st Cir.1989)] ...:

We do not think *Pennhurst* applies. First, the basis of this action is not state law but alleged violations of the first and fifth amendments to the federal constitution. The reinstatement Order was remedial relief to which plaintiffs were entitled because their federal constitutional rights had been violated....

As we observed in *Cordero,* 867 F.2d at 20, *Pennhurst* simply determined that the eleventh amendment precludes a federal court from enjoining compliance with *state law* by state officials. Thus, it is clear that defendants' *Pennhurst* argument, at best, adverted only obliquely to federalism concerns. Accordingly, any more expansive federalism claim defendants would raise on appeal was not properly presented below, either before or after the entry of the reinstatement order. Moreover, even on appeal defendants have presented no developed argumentation based on federalism concerns, relying instead on general references to the reinstatement criteria discussed in *Rosario–Torres.* Failure to develop a claim on appeal constitutes a waiver. *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).